**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

FILED
Scott L. Poff, Clerk
United States District Court

By mgarcia at 9:24 am, Feb 26, 2020

JACKIE DELORES DOUGLAS,

        Plaintiff,

    v.

ANDREW SAUL, Commissioner of Social
Security,

        Defendant.

CIVIL ACTION NO.: 2:18-cv-64

## <u>ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>

Plaintiff contests the decision of Administrative Law Judge Craig R. Petersen ("the ALJ" or "ALJ Petersen") denying his claim for a Period of Disability and Disability Insurance Benefits. It appears Plaintiff wishes for the Court to reverse and remand the ALJ's decision. Doc. 16 at 2, 11. Defendant asserts the Commissioner's decision should be affirmed. Doc. 17 at 13. For the reasons which follow, I **RECOMMEND** the Court **AFFIRM** the Commissioner's decision and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

## BACKGROUND

Plaintiff filed an application for a Period of Disability and Disability Insurance Benefits on July 14, 2014, alleging she became disabled on November 30, 2012, due to fibromyalgia, headaches, high blood pressure, high cholesterol, and ankle, back, hand, wrist, shoulder, knee, and neck problems. Doc. 14-2 at 21 (R. 20); Doc. 17 at 2. Plaintiff later amended her alleged onset date to January 1, 2014. Doc. 14-2 at 21 (R. 20). After her claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On November 13, 2017, ALJ

Petersen conducted a video hearing at which Plaintiff, who was then represented by counsel, appeared and testified from Brunswick, Georgia. Kenneth Bennett, a vocational expert, also appeared at the hearing. Id. ALJ Petersen found Plaintiff was not disabled within the meaning of the Social Security Act ("the Act") at any time from November 30, 2012 (her alleged onset date) through December 31, 2015 (her date of last insured). Id. at 34 (R. 33). The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. Id. at 3 (R. 2).

Plaintiff, born on December 20, 1970, was 47 years old when ALJ Petersen issued his final decision and 45 years old on her date last insured. Id. at 33 (R. 32). She has at least a high school education and is able to communicate in English. Id. Plaintiff's past relevant work experience includes work as a hotel worker, convenience store clerk, and clerk and assistant manager in a drug store. Doc. 16 at 7; Doc. 17 at 2.

## DISCUSSION

### I.     The ALJ's Findings

Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A).  Pursuant to the Act, the Commissioner has established a five-step

process to determine whether a person meets the definition of disability.  20 C.F.R. §§ 404.1520,

416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity."  Id.

If the claimant is engaged in substantial gainful activity, then benefits are immediately denied.

Id.  If the claimant is not engaged in such activity, then the second inquiry is whether the

claimant has a medically severe impairment or combination of impairments.  Id. at 140–41.  If

the claimant's impairment or combination of impairments is severe, then the evaluation proceeds

to step three.  The third step requires a determination of whether the claimant's impairment

meets or equals one of the impairments listed in the Code of Federal Regulations and

acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful

activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v.

Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004).  If the impairment meets or equals one of the

listed impairments, the plaintiff is presumed disabled.  Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential

evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from

performing past relevant work, i.e., whether the claimant has the residual functional capacity to

perform her past relevant work.  Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693

(11th Cir. 2013).  A claimant's residual functional capacity "is an assessment . . . of the

claimant's remaining ability to do work despite [her] impairments."  Id. at 693–94 (ellipsis in

original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).  If the claimant is

unable to perform her past relevant work, the final step of the evaluation process determines

whether she is able to make adjustments to other work in the national economy, considering her

age, education, and work experience.  Phillips, 357 F.3d at 1239.  Disability benefits will be awarded only if the claimant is unable to perform other work.  Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff did not engage in substantial gainful activity from her alleged onset date, November 30, 2012, through her date last insured, December 31, 2015.  Doc. 14-2 at 24 (R. 23).  At step two, ALJ Petersen determined Plaintiff had degenerative cervical spine disease status post-fusion, lumbar radiculopathy, sleep apnea, fibromyalgia, and depression, conditions considered "severe" under the Regulations because they "significantly limit" Plaintiff's ability to perform basic work-related activities.  Id.  However, at the third step, the ALJ determined Plaintiff's impairments did not meet or medically equal the severity of a listed impairment.[1]  Id.  The ALJ found Plaintiff had the residual functional capacity to perform work at the sedentary exertional level, with the following exceptions: pushing and pulling up to 10 pounds; standing and walking for 6 hours and sitting for up to 6 hours out of an 8-hour work day with normal breaks; occasional stooping, kneeling, crouching, crawling, and climbing ramps and stairs, but no climbing of ladders or scaffolds; occasional performing of overhead work and using foot controls; frequent handling, fingering, and feeling; no exposure to unprotected heights or other hazards; and performing simple routine work and making simple, work-related decisions with few workplace changes and no social deficits.  Id. at 24 (R. 24).  At the next step, the ALJ determined Plaintiff could not perform any of her past relevant work.  Id. at 33 (R. 32).  The ALJ concluded at the fifth and final step that Plaintiff could perform the jobs of addresser, call-out operator, and tube operator,

---

[1]     Plaintiff does not contend she meets a Listing, doc. 16, and, in fact, her former counsel specifically stated, "We do not allege that Ms. Douglas meets a [L]isting."  Doc. 16-1 at 11.  Nevertheless, ALJ Petersen made findings thaat Plaintiff did not meet Listings 1.04 (spinal disorder), 11.08 (disorganization of functioning), or 12.04 (mental impairment).  Doc. 14-2 at 24–25 (R. 23–24).

all of which are at the sedentary, unskilled level and exist in significant numbers in the national economy.  Id. at 33–34 (R. 32–33).

## II.     Issue Presented

Plaintiff contends substantial evidence does not support the ALJ's determination that she is not disabled within the meaning of the Act.  Doc. 16.  Within this larger enumeration of error, Plaintiff disagrees with the ALJ's assessments of her residual functional capacity and her activities of daily living and avers she cannot perform the jobs the vocational expert identified. Id. at 7–11.

## III.    Standard of Review

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards.  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence.  Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved.  The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007).  The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence.  Dyer, 395 F.3d at 1210.  In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards.

Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification.  Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity.  Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard).  If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision.  Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), *overruling by statute on other grounds recognized by* Lane v. Astrue, No. 8:11-CV-345, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

**IV.     Whether Substantial Evidence Supports ALJ Petersen's Determination that Plaintiff is not Disabled**

      **A.     ALJ's Residual Functional Capacity Finding**

Plaintiff states "there is absolutely zero support in the record and evidence directly contradicts every so-called fact" for the ALJ's residual functional capacity finding.  Doc. 16 at 7.  Plaintiff also asserts she has no fine motor skills and has not been able to stoop, kneel, crouch, or crawl "in many, many years."  Id.  In addition, Plaintiff contends she began having back pain as early as 2001 and had an unrelated surgery in 2008, after which "her health went down hill . . . ."  Id.  Plaintiff maintains an MRI conducted in 2016 "proves her pain still" exists and MRIs from 2018 and 2019 reveal she has degenerative discs in her lower lumbar spine.  Id. at 8.

Defendant notes the ALJ considered MRIs, x-rays, and other medical evidence, as well as Plaintiff's own testimony, to determine Plaintiff's impairments limit her to performing work at the sedentary level.  Doc. 17 at 5.  Defendant states the evidence of record does not reveal

Plaintiff has additional limitations beyond those ALJ Petersen found in the residual functional capacity. Id. at 8. Further, Defendant alleges any worsening of condition Plaintiff alleges is irrelevant to a disability determination for purposes of Disability Insurance Benefits, and any evidence she has presented to this Court should only be considered for remand purposes. Id. at 8–9.

"The claimant's residual functional capacity is an assessment, based upon all relevant evidence, of the claimant's ability to do work despite [her] impairments." Gaskin v. Comm'r of Soc. Sec., 533 F. App'x 929, 930 (11th Cir. 2013) (citing 20 C.F.R. § 404.1545(a)(1)). A residual functioning capacity assessment must always consider and address medical source opinions. "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178–79 (11th Cir. 2011) (alteration in original) (quoting 20 C.F.R. §§ 404.1527(a)(2) & 416.927(a)(2)). If the residual functioning capacity assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted. SSR 96-8p. "An ALJ is not entitled to pick and choose through a medical opinion, taking only the parts that are favorable to a finding of nondisability." Kerwin v. Astrue, 244 F. App'x 880, 885 (10th Cir. 2007). The final determination of a plaintiff's residual functioning capacity is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d), (e)(2).

ALJ Petersen noted Plaintiff went to the CMAP Clinic in 2013 and 2014 with reports of pain in her knees, ankles, and hands.  Doc. 14-2 at 28 (R. 27).[2]  ALJ Petersen observed Plaintiff's physical examination revealed edema of her foot and ankle and crepitus of her knees without redness, warmth, or tenderness of her joints, and she weighed 290 pounds and was 5'8".  Id.  Plaintiff was advised to diet and exercise, but she did neither, though she did request diet pills and was refused.  The ALJ noted, despite repeated advice by her doctors to lose weight, Plaintiff's records showed she did not lose and maintain weight loss.  Id.

In August 2014, Plaintiff was seen at Coastal Community Health Services and complained of a knot on her right wrist.  Id.  The ALJ stated Plaintiff's examination revealed full, painless range of motion of her foot, ankle, and knee, which was inconsistent with Plaintiff's allegations regarding the severity, frequency, and limiting effects of foot, ankle, and knee pain.  Id.  The ALJ also stated Plaintiff claimed bilateral knee pain and ankle and foot pain in September 2014, and her examination revealed some crepitus of the knees and tenderness and decreased range of motion in her cervical spine.  Id.

Plaintiff saw Dr. Mark Banks for a consultative medical examination in January 2015, at which time she complained of pain in her back and wrists that was "aggravated by lifting and activity" and "alleviated by a heating pad[.]"  Id. (citing Doc. 14-7 at 68 (R. 367)).  Plaintiff reported she could sit for 30–45 minutes, stand for 30 minutes, and lift 5–8 pounds, admitted she could feed and dress herself, reported she could drive, shop, cook, clean dishes, and climb a few stairs, and reported she was drinking "a lot" of alcohol.  Id. at 28–29 (R. 27–28) (citing Doc. 14-7 at 68 (R. 367)).  ALJ Petersen stated, despite her allegations of severity and limiting effects, during Plaintiff's examination, she: walked with a normal gait without use of an assistive device;

---

[2]   Plaintiff does not contend she had mental impairments which affected her ability to work.  Doc. 16.  Accordingly, I have omitted ALJ Petersen's discussion of the same, to the extent practicable.

was able to rise from a seated position without assistance; could stand on her toes and heels and tandem walk without difficulty; and could bend and squat without difficulty.  Id. at 29 (R. 28). ALJ Petersen noted Plaintiff had some swelling of her right wrist but no redness, warmth, atrophy, or deformity.  The ALJ observed Plaintiff had normal grip strength with adequate fine motor movements, dexterity, and the ability to grasp objects bilaterally.  Id.  He also observed the examination of Plaintiff's joints was normal except for some decreased range in motion in her right shoulder, x-rays of her cervical spine showed mild degenerative changes, and x-rays of her wrist were normal.  Id.  ALJ Petersen concluded Dr. Banks's examination and the x-rays of Plaintiff's wrist were not consistent with her allegations of intensity and limiting effects, and Dr. Banks's opinions as to Plaintiff's abilities to reach, push, grasp, or carry out daily activities were consistent with the objective evidence of record; thus, ALJ Petersen gave Dr. Banks's opinions "some weight[.]"  Id.

ALJ Petersen continued by noting Plaintiff reported having right shoulder pain with limited range of motion and having pain at 10/10, with worsening with movement, but did not report numbness or tingling in February and March 2015.  Id.  ALJ Petersen noted, contrary to her report to Dr. Banks, Plaintiff stated she only drank once or twice a year.  Upon examination, Plaintiff displayed normal range of motion in her right shoulder and normal strength, though x-rays of her shoulder showed mild degenerative joint disease of the AC joint.  Id.  In addition, x-rays of Plaintiff's cervical spine showed some loss of disc height at C5-6 and C6-7 levels, and she was diagnosed with impingement of right shoulder.  The ALJ observed Plaintiff had normal range of motion of her cervical and thoracic spine with no tenderness.  Although Plaintiff reported having right knee pain, her examination showed normal range of motion and strength, and x-rays showed some degenerative joint disease.  Id.

The ALJ opined findings from the MRI of Plaintiff's cervical spine in April 2015 supported her allegations of neck pain and upper extremity pain.  Id. at 30 (R. 29).  Those findings showed disc desiccation at the C4-5, C5-6, and C6-7 levels, mild deformation of the cord at the C5-6 level, disc herniation at the C5-6 level impressing the cord and moderate neural foraminal stenosis, and moderately severe recess stenosis.  Id. at 29–30 (R. 28–29).  Plaintiff had cervical spine surgery, including a fusion at the C5-6 level, in May 2015.  Id. at 30 (R. 29).  A month later, she reported improvement in her neck pain but stated she had back and arm pain which improved with ice and pain medications.  ALJ Petersen noted Plaintiff reported having radiating neck pain on her left upper extremity with numbness in July and August 2015, and she showed decreased range of motion of her left shoulder due to pain.  Id.  Plaintiff's right shoulder and upper extremity examination was normal.  Additionally, Plaintiff went to Summit Sports Medicine in October 2015 complaining of post-operative neck and bilateral upper extremity pain, numbness, and tingling and headaches.  Upon examination, Plaintiff exhibited tenderness and decreased range of motion of her cervical spine and decreased range of motion in her left shoulder but normal strength and range of motion in her right shoulder and upper extremities.  Id. The ALJ observed Plaintiff's rheumatologic work up and cervical spine x-rays were normal.  In addition, ALJ Petersen mentioned Plaintiff's July 2015 MRI of her cervical spine showed ongoing degenerative disc disease with several levels of stenosis.  Id.  Moreover, Plaintiff underwent another cervical spine surgery on December 14, 2015, which included decompression at the C4-5 and C6-7 levels, removal of the hardware at the C5-6 level, and new instrumentation at C4-C7 levels.  After this second surgery, Plaintiff had full strength in her upper extremities. Id.

ALJ Petersen stated Plaintiff had an EMG/nerve conduction study done in November 2015, which disclosed normal findings, and these findings were in contrast with Plaintiff's allegations of the frequency and severity of radiating pain, numbness, and tingling in her upper and lower extremities.  Id.  Likewise, ALJ Petersen observed Plaintiff's allegations of the severity, frequency, and limiting effects of her back and joint pain were inconsistent with May and June 2016 physical examinations which revealed normal range of motion in her back and musculoskeletal normal range of motion and strength with no tenderness or swelling.  Id. at 31 (R. 30).

Plaintiff saw Dr. Thomas Runyan on June 2016 for pain management.  Id.  ALJ Petersen observed Plaintiff alleged pain in her neck and trapezius bilaterally, right worse than left; pain at 10/10, though her pain fluctuated between 5/10 and 10/10; and her second cervical surgery did not relieve her pain.  Id. (citing Doc. 14-17 at 3–7 (R. 1018–22)).  Dr. Runyan's physical examination of Plaintiff disclosed she walked with a normal gait and had a normal station; she had some decreased range of motion of the cervical spine; she had a slight decrease in grip strength on the right but normal grip strength on the left; and she showed normal strength, range of motion, and tone in her upper extremities.  Id.

The ALJ stated Plaintiff's July 2016 examination at Southern Ortho & Sports Medicine, after she reported experiencing back pain while cleaning her house, increased pain with prolonged sitting and standing, and radiating pain into her legs with numbness and tingling, revealed Plaintiff had a normal gait and good balance, full range of motion and normal strength without tenderness in both shoulders, and normal examinations of her neck, back, and hips.  Id.  However, Plaintiff did not report having knee pain or other problems with her knees.  Id. at 32 (R. 31).  Plaintiff had another visit later this month, during which she reported "insidious onset

of knee pain, right worse than left, with a giving away sensation and swelling of her knees during and following activity." Id. ALJ Petersen stated Plaintiff's examination showed intact motor and sensory findings in all extremities, her back was normal, and some decreased range of motion in her knees, but x-rays of her knees revealed no abnormality. Id. The ALJ opined the objective findings from examination were not consistent with Plaintiff's allegations.

In addition, ALJ Petersen remarked Plaintiff was seen at the Southeast Regional Medical Center on October 18, 2016 but did not complain about neck, back, knee, ankle, foot, or hand pain during this visit, which was inconsistent with Plaintiff's complaints regarding the frequency, severity, and limiting effects of her conditions. Moreover, upon physical examination, Plaintiff had full range of motion of her neck. The next month, Plaintiff returned and complained of bilateral pain and swelling for five days and an inability to use her hands; however, x-rays and physical examination of Plaintiff's hands were normal and inconsistent with Plaintiff's subjective complaints. Id.

The ALJ observed Plaintiff saw Dr. Erick Bournigal, a rheumatologist with Southeast Georgia Physicians Associates, on March 17, 2017 with complaints of pain, swelling, and cramps in her hand and swelling of her feet. Yet, Dr. Bournigal's examination revealed no synovitis of any joint. Additionally, Plaintiff's sensory examination and motor function were normal, and she walked with a normal gait. Based on her subjective complaints, Dr. Bournigal diagnosed Plaintiff with Willis Ekbom disease, or restless leg syndrome, a subset of fibromyalgia. Id. ALJ Petersen noted Plaintiff's treatment notes indicated she "carries a diagnosis of fibromyalgia," but these notes did not disclose Plaintiff underwent formal examination or testing to support that diagnosis. Id. Plaintiff received an injection for her arm

pain, and she stated that provided her with one day of relief.  Id.  Plaintiff's physical examination was unchanged.  Id.

In April 2017, Plaintiff went to Summit Sport and complained of neck pain.  ALJ Petersen observed the examining doctor expressed concern about failure of the hardware in Plaintiff's cervical spine from her surgeries and recommended Plaintiff undergo a neurosurgical consultation for an assessment regarding further surgery to replace or remove the hardware.  Id. Also in April 2017, Plaintiff went to Glynn Family Medicine Center reporting increased muscle fatigue with activity, such as washing dishes and folding clothes.  Id.  Plaintiff reported pain with loss of range of motion of her elbows, wrists, and PIP joints of both hands and diffuse muscle aches and pain/trigger points on palpitation.  Id.  In May 2017, Plaintiff was tested for Lyme disease and connective tissue disorder, which were negative; her ANA and rheumatoid factor were normal; her physical examination was unchanged; and she had a brain MRI that was normal other than a small, nonspecific T2 hyperintensity "that did not enhance."  Id. at 33 (R. 32).

Finally, ALJ Petersen stated a July 2017 MRI scan of Plaintiff's cervical spine showed disc osteophyte complex and hypertrophy at the C3-4 level with mild neuroforaminal stenosis but no significant canal stenosis and post-operative changes with mild neuroforaminal stenosis and bony canal stenosis at C4-5, C5-6, and C6-7 levels.  Id.  ALJ Petersen stated he gave the opinions of the State Agency medical consultants that Plaintiff could perform a range of light exertional work "partial weight[,]" but evidence at the hearing supported additional limitations on Plaintiff's residual functional capacity.  Id.

Substantial evidence supports ALJ Petersen's determination that Plaintiff had the residual functional capacity to perform work at the sedentary level with limitations.  The ALJ relied on

Plaintiff's medical records, which included results from Plaintiff's MRIs and x-rays and which he found to be inconsistent with Plaintiff's subjective complaints in many instances, as well as evidence adduced at the hearing.  Id. at 28–33, 48–70 (R. 27–32, 47–69).  The Court notes Plaintiff's references to and submission of 2018 and 2019 MRI results, which Plaintiff contends show her condition has deteriorated.  Doc. 16 at 3; Doc. 16-1 at 1–7.  However, any such evidence is not relevant to whether Plaintiff was disabled prior to the date of her last insured on December 31, 2015.  See Bullard v. Comm'r, Soc. Sec. Admin., 752 F. App'x 753, 755 (11th Cir. 2018) (noting medical evidence of impairment after the relevant period not considered, as "there was no reasonable basis to conclude that this evidence related back to [claimant's] previous disability claim[]"); Jones v. Colvin, No. 3:15-cv-208, 2015 WL 9694507, at *6 (M.D. Fla. Dec. 15, 2015) ("[O]pinions rendered after Plaintiff's date of last insured are of little value to the ALJ's disability determination . . . .).

Further, to the extent the 2018 and 2019 MRIs constitute "new" evidence, Plaintiff has not shown such evidence is relevant to the ALJ's disability insurance benefits' determination. Typically, a claimant may present new evidence at every stage of the administrative process. Ingram, 496 F.3d at 1261.  Although the Appeals Council may decline to review the ALJ's denial of benefits, it "must consider new, material, and chronologically relevant evidence" submitted by the claimant.  Washington v. Soc. Sec. Admin., Comm'r, 806 F.3d 1317, 1320 (11th Cir. 2015) (quotations omitted); 20 C.F.R. § 404.970(b).  A claimant may seek review in a federal court of "any final decision of the Commissioner of Social Security," only after exhausting these administrative remedies.  42 U.S.C. § 405(g); see Sims v. Apfel, 530 U.S. 103, 107 (2000) (claimant must appeal to Appeals Council to exhaust remedies).

Section 405(g) permits a district court to remand an application for benefits to the Commissioner by two methods, which are commonly denominated "sentence four remands" and "sentence six remands." As relevant here, sentence six of § 405(g) provides a federal court the power to remand the application for benefits to the Commissioner for the taking of additional evidence upon a showing "that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." Plaintiff has not made this showing regarding the 2018 and 2019 MRIs. Doc. 16.

For these reasons, this enumeration of error as to the ALJ's residual functional capacity is without merit.[3]

### B.        Plaintiff's Activities of Daily Living

Plaintiff asserts she cannot use a can opener, wash dishes for more than a few minutes, stand for more than 45 minutes, or sit for 2 hours. Doc. 16 at 7. Plaintiff also asserts she cannot fasten buttons or use zippers, can only shower (versus taking a bath), and sometimes has trouble standing up from the toilet because of her back and knees. Id. at 6–7.

Defendant responds ALJ Petersen "properly considered Plaintiff's activities of daily living" as a factor in assessing Plaintiff's subjective complaints of pain and other symptoms against the entire record. Doc. 17 at 9. Defendant states the ALJ did not "unduly rely" on Plaintiff's activities to decide her claim, nor did he find Plaintiff's activities dispositive as to her ability to work. Id. at 10. Further, Defendant states the ALJ did not misrepresent Plaintiff's testimony, and she does not dispute she can and does perform these activities. Id.

"An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability." 42 U.S.C. § 423(d)(5)(A). Rather, "there must be medical signs and

---

[3]        ALJ Petersen's findings relating to Plaintiff's activities of daily living are important to his overall determination of Plaintiff's residual functional capacity but are addressed separately in this Report.

findings, established by medically acceptable clinical or laboratory diagnostic techniques, which

show the existence of a medical impairment that results from anatomical, physiological, or

psychological abnormalities which could reasonably be expected to produce the pain or other

symptoms alleged and which, when considered with all evidence . . . would lead to a conclusion

that the individual is under a disability." Id.  In evaluating the intensity and persistence of a

claimant's symptoms and determining the extent to which they limit work capacity, an ALJ

considers "whether there are any inconsistencies in the evidence and the extent to which there

are any conflicts between [the claimant's] statements and the rest of the evidence."  20 C.F.R. §§

404.1529(c)(4), 416.929(c)(4).  Pertinent evidence includes evidence of daily activities; the

location, duration, frequency, and intensity of pain and other symptoms; precipitating and

aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to

alleviate pain or other symptoms; treatment other than medication for relief of pain or other

symptoms; and measures taken to relieve pain or other symptoms.  20 C.F.R. §§ 404.1529(c)(3),

416.929(c)(3).  If an ALJ fails to credit a claimant's testimony about his symptoms, the ALJ

"must articulate explicit and adequate reasons for doing so."  Holt v. Sullivan, 921 F.2d 1221,

1223 (11th Cir. 1991).  This process is called a subjective symptom evaluation and is meant to

assess whether a claimant's self-described limitations are consistent with and supported by the

record.  SSR 16-3p.

As to Plaintiff's activities of daily living, ALJ Petersen noted Plaintiff claimed in an

August 2014 Disability Report she was limited in her ability to work due to several physical

conditions and that she stopped working on January 1, 2009 due to these conditions and non-

specified "other reasons."  Doc. 14-2 at 26 (R. 25).  ALJ Petersen found Plaintiff's assertions

inconsistent with her earning records, which showed she had earnings from selling Avon

products in 2013.  Id.  In another Disability Report a month later, the ALJ noted Plaintiff

reported swelling in her feet and hands, that her knees "give out on her," causing her to fall, and

having lower back pain with prolonged walking and standing.  Plaintiff described a "good day"

as being one in which she could check her blood sugar.  Plaintiff stated she did not take care of

anyone or a pet, could not fasten buttons or use zippers, could not take baths, only showers,

needed two to three days to shave, occasionally needed help getting on and off the toilet due to

her knees, needed reminders to take care of personal needs and to take her medications, and that

her family helped her with her hair.  Id.  The ALJ observed Plaintiff's claims were internally

inconsistent with the rest of her Report, in which she stated she could prepare her own meals

almost daily and could make beds and wash clothes some days, went outside three to four times a

week, drove a car, shopped in stores every two weeks for a couple of hours, and could pay bills,

count change, and maintain savings and checking accounts.  Additionally, the ALJ noted

Plaintiff's contention she spent time with other people and attended church was inconsistent with

her statement she did not have a social life due to her pain.  ALJ Petersen remarked Plaintiff

made no claim her alleged conditions affected her ability to concentrate and maintain attention.

Id. at 26–27 (R. 25–26) (citing Doc. 14-6 (R. 230–39)).

ALJ Petersen also recounted Plaintiff's testimony during the hearing, some of which

contradicted or was inconsistent with her allegations regarding her conditions.  For instance, ALJ

Petersen pointed to Plaintiff having admitted to working in 2013 even though she also claimed

she stopped working in 2009.  While Plaintiff stated she could not vacuum or sweep, she also

stated she could perform other household chores.  Further, the ALJ noted Plaintiff previously

alleged she had carpal tunnel syndrome, but she admitted she had not been diagnosed with that

condition.  Id. at 27 (R. 26).

ALJ Petersen concluded Plaintiff's "medically determinable impairments could reasonably be expected to cause" her alleged symptoms, but Plaintiff's assertions regarding the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and with other evidence in the record . . . ." Id. at 28 (R. 27). ALJ Petersen also found Plaintiff's assertions regarding the intensity, persistence, and limiting effects of Plaintiff's symptoms inconsistent with her treatment and evaluations. Id.

The subjective symptom evaluation is wholly "the province of the ALJ." Mitchell v. Comm'r of Soc. Sec., 771 F.3d 780, 782 (11th Cir. 2014) (citing to Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005)). Reviewing courts "will not disturb a clearly articulated [subjective symptom evaluation] supported by substantial evidence." Id. (citing to Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995)). "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision," as long as the decision is not so broad as to prevent a reviewing court from concluding that the ALJ "considered [the claimant's] medical condition as a whole." Mitchell, 771 F.3d at 782.

Here, the ALJ made a clearly articulated finding that Plaintiff's medically determinable impairments could produce her alleged symptoms. Nevertheless, the ALJ found the evidentiary record contradicted some of Plaintiff's allegations concerning the intensity, persistence, and limiting effects of these symptoms and that Plaintiff's reports, at times, were inconsistent with each other. The ALJ specifically considered some of the same assertions Plaintiff makes here as to her daily activities of living but rejected these assertions for these same reasons. Doc. 16 at 6–7. Substantial evidence supports ALJ Petersen's determination as to Plaintiff's activities of daily living, and Plaintiff's contention to the contrary is without merit.

### C.       Plaintiff's Ability to Perform Jobs the Vocational Expert Identified

Plaintiff avers she cannot perform the jobs the vocational expert identified because she cannot stand or sit for long periods of time or use her hands and has memory loss due to her medical conditions.  Doc. 16 at 10.  Moreover, Plaintiff asserts the "unskilled variety" for a call-out operator no longer exists and a tube operator job does not exist in Brunswick, Georgia.  Id.

Defendant states Plaintiff has not met her burden of proving she cannot perform the identified jobs.  Doc. 17 at 11.  Defendant also states Plaintiff has not supported her argument that the call-out operator job does not exist as an unskilled job, as the Social Security Agency continues to rely on the Dictionary of Occupational Titles ("DOT") as substantial evidence supporting a finding that a claimant can perform a job.  Defendant contends jobs must exist in significant numbers in the national economy, not where a claimant lives, under the Regulations. Id.

At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant "can make an adjustment to other work."  20 C.F.R. § 404.1520(a)(4)(v).  "Essentially, the ALJ must determine if there is other work available in significant numbers in the national economy that the claimant has the ability to perform.  If the claimant can make the adjustment to other work, the ALJ will determine that the claimant is not disabled.  If the claimant cannot make the adjustment to other work, the ALJ will determine that the claimant is disabled."  Phillips, 357 F.3d at 1239.  The ALJ "bears the burden of demonstrating that, in light of the claimant's residual functional capacity, a significant number of jobs that the claimant can perform exist in the national economy."  Gaskin, 533 F. App'x at 930 (citing Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999), and 20 C.F.R. § 404.1520(a)(4)(v), (g)(1)).  "An ALJ may determine whether a claimant has the ability to adjust

to other work in the national economy by either applying the grids or using a vocational expert."

Mabrey v. Acting Comm'r of Soc. Sec. Admin., 724 F. App'x 726, 730 (11th Cir. 2018) (citing

Phillips, 357 F.3d at 1239–40).

"When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to

the vocational expert to establish whether someone with the limitations that the ALJ has

previously determined that the claimant has will be able to secure employment in the national

economy." Phillips, 357 F.3d at 1240. "In order for a [vocational expert's] testimony to

constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all

of the claimant's impairments." Moore v. Astrue, 256 F. App'x 330, 332 (11th Cir. 2007)

(citation omitted). The ALJ is not required to formulate a hypothetical that includes findings he

rejected as unsupported. See Glover v. Colvin, 705 F. App'x 815, 818 (11th Cir. 2017).

In finding Plaintiff could perform jobs existing in significant numbers in the national

economy despite her limitations, ALJ Petersen asked a vocational expert to consider Plaintiff's

age, education, work experience, and residual functional capacity (which, as discussed herein,

the ALJ determined was work at the unskilled, sedentary work level with limitations which

eroded Plaintiff's occupational base). Doc. 14-2 at 34 (R. 33). Relying on this framework, the

vocational expert testified that a hypothetical person could perform three jobs at the unskilled,

sedentary level existing in significant numbers in the national economy: (1) addresser, DOT

209.587-010, with approximately 6,000 jobs; (2) call-out operator, DOT 237.367-014, with

approximately 8,000 jobs; and (3) tube operator, DOT 239.687-014, with approximately 3,500

jobs. Id. at 72–73 (R. 71–72). ALJ Petersen found the vocational expert's testimony was

consistent with information in the DOT and Plaintiff's work experience. Id. at 34 (R. 33). As a

result, the ALJ also found Plaintiff was not disabled within the meaning of the Act through the

date of her last insured, because she could adjust successfully to other work existing in the national economy.  Id.

ALJ Petersen included in his hypothetical presented to the vocational expert the residual functional capacity he found Plaintiff had through her date last insured.  As the Court has determined, substantial evidence supports the ALJ's finding as to Plaintiff's residual functional capacity.  Thus, substantial evidence supports ALJ Petersen's reliance on the vocational expert's testimony.  Further, Plaintiff states, without support, the O*Net establishes a call-out operator at the unskilled level no longer exists.[4]  Doc. 16 at 10.  Even if Plaintiff's statement were true, such a statement would not entitle her to relief.  Tisdale v. Comm'r, U.S. Soc. Sec. Admin., 5:18-cv-01230, 2019 WL 1897232, at *6 (N.D. Ala. Apr. 29, 2019) (noting claimant's assertion that the O*Net is more up-to-date than the DOT and her argument about the inconsistencies between the two but rejecting the same because the ALJ "expressly found the vocational expert's testimony based on the [DOT] reliable[]").[5]  Moreover, Plaintiff's argument that the job of tube operator does not exist in Brunswick, Georgia, is of no moment.  Doc. 16 at 10.  The determination of whether a claimant can perform jobs at certain exertional levels relies, in part, on whether those jobs exist in significant numbers at the national, not a local or regional, level.  20 C.F.R. §§ 404.1566(a), (c); Moore-Montgomery v. Berryhill, CV617-162, 2019 WL 1009424, at *4, n.4 (S.D. Ga. Jan. 15, 2019) (quoting Atha v. Comm'r, Soc. Sec. Admin., 616 F. App'x 931, 935 (11th Cir. 2015), and citing Brooks v. Barnhart, 133 F. App'x 669, 670 (11th Cir. 2005)), report and recommendation adopted, 2019 WL 1005200 (S.D. Ga. Mar. 1, 2019).

---

[4]     O*Net is the Occupational Information Network.  Hallman v. Liberty Life Assurance Co. of Boston, Case No. 3:15-cv-49, 2016 WL 6662706, at *7 (M.D. Ga. Nov. 10, 2016).

[5]     The Court notes this case is currently on appeal.  No. 19-12030 (11th Cir. May 24, 2019).  Even if the Eleventh Circuit reverses the district court on this narrow ground, Plaintiff still does not meet her burden that she cannot perform any jobs the vocational expert identified.

In sum, substantial evidence supports the ALJ's presentation of a hypothetical to the vocational expert and his reliance upon the ALJ's testimony and the DOT.  Plaintiff's contentions to the contrary are unavailing.

**CONCLUSION**

Based on the foregoing, I **RECOMMEND** the Court **AFFIRM** the decision of the Commissioner and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **14 days** of the date on which this Report and Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 26th day of February, 2020.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA